UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 16-11050-RGS

DEMOND CHATMAN

v.

DOUG DEMOURA

MEMORANDUM AND ORDER ON
PETITION FOR WRIT OF HABEAS CORPUS

October 29, 2018

STEARNS, D.J.

Demond Chatman, an inmate at Massachusetts Correctional Institution in Concord, Massachusetts, brought this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(2). Chatman challenges the factual determinations made by the Massachusetts courts regarding his competency to stand trial. For the reasons to be explained, the writ will be denied.

**BACKGROUND**

On January 24, 2002, Chatman was convicted of first-degree murder by a Suffolk Superior Court jury. The facts of the underlying case are taken from the Supreme Judicial Court (SJC)'s decision in *Commonwealth v.*

*Chatman*, 466 Mass. 327, 328-331 (2013).[1]  In February of 2000, Chatman lived with his great aunt in Boston.  Chatman was estranged from his mother because, according to family members, he was jealous of his mother's relationship with his two half-sisters.  During the course of a February 7, 2000 telephone call between his great aunt and one of the half-sisters, Chatman was overheard in the background saying, "Why do they always have to call here?"  Three days later, Chatman called police to report that his mother had been shot.  Physical evidence indicated that the mother's body had been moved from Chatman's bedroom to the great aunt's bedroom, and that Chatman had mopped his bedroom floor and loaded his bloody clothing into a washing machine.  Chatman denied to police killing his mother, but some of his statements were contradicted by the evidence.  The Commonwealth's theory of the case was that the mother had gone to the great aunt's house to confront Chatman about his hostile remark three days earlier, and that Chatman had shot her during the altercation.

On January 31, 2002, Chatman filed a notice of appeal.  On May 6, 2008, while his appeal was pending, Chatman filed a motion in the Superior Court for a new trial on competency grounds.  A Superior Court judge, who

---

[1] These facts are presumed to be correct absent "clear and convincing evidence" to the contrary.  28 U.S.C. § 2254(e)(1).

was also the trial judge, denied the motion on October 6, 2011, without holding an evidentiary hearing. On September 3, 2013, the SJC vacated the decision and remanded Chatman's case for further proceedings, noting that Chatman bore the burden of establishing by a preponderance of the evidence that "the Commonwealth would not have been able to prove he was competent to stand trial." *Chatman*, 466 Mass. at 339. Following an evidentiary hearing, the same Superior Court denied the renewed motion for a new trial on November 5, 2014. On December 10, 2014, Chatman filed a second notice of appeal.

As recited by the SJC, *see Commonwealth v. Chatman*, 473 Mass. 840, 841-848 (2016), the 2014 evidentiary hearing disclosed the following. Chatman called ten witnesses, many of whom testified about Chatman's hallucinations, paranoia, and schizophrenia. The evidence established that Chatman had suffered from mental illness since his childhood but that his symptoms had "varied" and "waxed and waned" over time. *Id.* at 848. The week after Chatman was convicted, Carrie Holowecki, a Department of Corrections (DOC) counselor, interviewed Chatman and assessed him as "logical" and "oriented." *Id.* at 843. Two weeks later, however, she noted that he had begun to show signs of "some paranoia." *Id.* Other mental health professionals testified that Chatman was "able to communicate and

exhibited an understanding of his condition." *Id.* at 848. Chatman's trial counsel, John Bonistalli, testified that while Chatman did not actively participate in the trial, he understood the defense, the charges against him, and the importance of the verdict. Bonistalli also testified that Chatman did not bring up the subject of his mental health nor did Bonistalli observe any indication that Chatman suffered from mental illness.

Dr. Robert Joss was the only mental health specialist who offered an opinion about Chatman's competency at the time of the trial. Dr. Joss interviewed Chatman three and four years after his conviction, reviewed his medical records, and consulted with a clinical social worker and a forensic psychiatrist. Dr. Joss reaffirmed his 2008 affidavit attesting that in his opinion Chatman "lacked competence to stand trial" and would have had problems "rationally understand[ing] the proceedings and . . . assist[ing] counsel." *Id.* at 844. On cross-examination, however, Dr. Joss conceded that Chatman presently had "a rational understanding of the crime for which he was on trial, the important people involved in his prosecution and defense, as well as the consequences of a verdict against him." *Id.* at 852. He also acknowledged that he had not spoken with Bonistalli (Chatman's trial counsel). In its decision, the SJC recognized that Chatman displayed some bizarre assumptions about his trial – including his expectation that his white

defense attorney would have a racial advantage over the prosecutor (who was Asian), and his belief that the prosecutor had deliberately used peremptory strikes to remove homosexuals and white women from the jury who would have favored his acquittal – but concluded that "those misconceptions alone were not enough to show that his rational understanding of the proceedings was compromised." *Id.* at 853.

A court-appointed psychiatrist, Dr. Naomi Leavitt, evaluated Chatman twice between May of 2008 and October of 2011 for competency to participate in the motion hearing. In the first evaluation, she determined that he was competent to participate so long as he did not have to testify. In the second evaluation, she opined that Chatman, who had started taking medication, was competent to participate fully in the hearing. *Id.* at 845.

On March 16, 2016, the SJC affirmed Chatman's conviction. On June 6, 2016, Chatman filed this petition. On May 8, 2018, the court dismissed the petition without prejudice, on the grounds that Chatman failed to exhaust his state court remedies. On June 13, 2018, the court reinstated Chatman's petition, at his attorney's request.

## DISCUSSION

"[A] federal court may not issue a habeas petition 'with respect to any claim that was adjudicated on the merits in State court proceedings' unless

the state court decision . . . 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *McCambridge v. Hall,* 303 F.3d 24, 34 (1st Cir. 2002) (quoting 28 U.S.C. § 2254(d) (Supp. II 1996)).[2]  Under subsection (d)(2), state court factual findings are "entitled to a presumption of correctness."  *Yeboah-Sefah v. Ficco,* 556 F.3d 53, 81 (1st Cir. 2009), citing *Demosthenes v. Baal,* 495 U.S. 731, 735 (1990).  A petitioner must rebut the state court factual findings by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Companonio v. O'Brien,* 672 F.3d 101, 109 (1st Cir. 2012); *Yeboah-Sefah,* 556 F.3d at 80.  While the relationship between the standards enunciated in § 2254(d)(2) and § 2254(e)(1) is not always clearly demarcated, *Companonio,* 672 F.3d at 109 n.6, both standards "'express the same fundamental principle of deference to state court findings.'" *John v. Russo,* 561 F. 3d 88, 92 (1st Cir. 2009), quoting *Teti v. Bender,* 507 F.3d 50, 58 (1st Cir. 2007).

The factual findings at issue here concern whether Chatman was competent to stand trial.  In order to find a defendant competent to stand

---

[2] The other basis for relief – that a state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" – has not been raised by Chatman.  28 U.S.C. § 2254(d)(1).

trial "it is not enough for the district court judge to find that the defendant is oriented to time and place and has some recollection of events." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (internal quotations omitted). Rather, the "'test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as a factual understanding of the proceedings against him.'" *United States v. Soldevila-Lopez*, 17 F.3d 480, 489 (1st Cir. 1994), quoting *Dusky*, 362 U.S. at 402 (internal quotation marks omitted).

Chatman argues that the SJC made four unreasonable determinations of fact. First, Chatman asserts that the SJC's finding that his symptoms "waxed and waned" was not based on witness testimony or any psychological report nor was it logical (because there was no evidence that he was not in a waxing stage during the trial). The suggestion is simply erroneous. There is ample support for the SJC's determination that Chatman was functioning at a sufficient level of competence during his trial. His principal trial attorney, Bonistalli, testified that Chatman comprehended the issues at his trial and the consequences of an adverse outcome, and that he exhibited no signs of mental illness during the trial itself. The SJC did not ignore evidence that Chatman suffered from mental illness, but mental illness alone does not

prove incompetence to stand trial. *See Commonwealth v. Robbins*, 431 Mass. 442, 448 (2000) ("A defendant may have a mental illness or condition, but still be competent under the *Dusky* test."); *Indiana v. Edwards*, 554 U.S. 164, 178 (2008) (holding that a defendant can be "competent enough to stand trial under *Dusky* but . . . still suffer from severe mental illness").

Second, Chatman argues that it was unreasonable for the SJC to find that he was able to effectively communicate with his attorneys during the trial. While Chatman acknowledges extensive conversations with his trial counsel, he rests on the fact that he never disclosed his mental illness to Bonistalli, which Dr. Joss later concluded was symptomatic of his paranoid state. The SJC, however, rejected Dr. Joss' diagnosis, on the reasonable ground that Dr. Joss never interviewed Bonistalli. Absent exceptional circumstances, it is not open to this court to question a state court's credibility determinations. *See Teti*, 507 F.3d at 59 (1st Cir. 2007) ("[T]he state trial judge's implicit credibility determinations, adopted by the [state appellate court], are exactly the type of factual determinations to which we defer, at least short of any indication of serious error.").

Third, Chatman asserts that the SJC erroneously relied on Department of Correction (DOC) records in reaching its determination that his symptoms "waxed and waned." However, this mischaracterizes the SJC's assessment,

namely, that, "[a]t times it is clear to those around him that the defendant is suffering from a mental illness, while at other times he presents as calm, engaged, and communicative," *Chatman*, 473 Mass. at 848 (2016), citing among other excerpts from the treatment records, Holowecki's observation that she found Chatman to be logical and organized one day, but disorganized and delusional on their next visit. The SJC also noted Chatman's disclosure to several treating mental health professionals of his history of being prescribed antipsychotic medication. *Id.* at 850 n.12.

Finally, Chatman claims that the SJC erred in determining that Chatman understood the nature of the criminal proceedings, citing the inflated expectations he conveyed to Dr. Joss about the prospects of his Caucasian attorney facing off against an Asian Assistant District Attorney. He attributes these misconceptions to his mental illness. The SJC dismissed the weight of Dr. Joss' testimony in this regard, noting that the portrait he painted was of "a defendant who may have misconceived portions of the proceedings due to preexisting prejudicial stereotypes, but not one who could not rationally understand those proceedings." *Id.* at 852.

In sum, ample evidence in the record supports the SJC's factual findings on the issue of competence at trial. Consequently, there is no

substantial basis, let alone clear and convincing evidence, to support the contention that the SJC's findings were unreasonable as a matter of law.

## ORDER

For the foregoing reasons, Chatman's petition is <u>DENIED</u> and dismissed with prejudice.  The Clerk will enter judgment for Respondent and close the case.[3]

SO ORDERED.

<u>/s/ Richard G. Stearns</u>
UNITED STATES DISTRICT JUDGE

---

[3] Chatman is advised that any request for the issuance of a Certificate of Appealability pursuant to 28 U.S.C. § 2253 of the court's Order dismissing his petition is also <u>DENIED</u>, the court seeing no meritorious or substantial basis supporting an appeal.